UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

STERLING NATIONAL BANK,

        Plaintiff,

   v.

VI CORPS LLC, DON BETHUNE, and
VICTOR VICARI,

        Defendants.

Case No. 19-cv-1115-JPG

## MEMORANDUM AND ORDER

This matter comes before the Court on defendant Don Bethune's motion to set aside entry of default and default judgment against him (Doc. 33). Plaintiff Sterling National Bank ("Sterling") responded to the motion (Doc. 38). The Court held a hearing on the motion on September 21, 2021, at which it heard testimony from Amanda Thomas (via videoconference), Don Bethune ("Bethune"), Tyler Bethune ("Tyler"), and Jack Howser. The Court took the matter under advisement. Sterling has since submitted supplemental authority on a question that arose at the hearing (Doc. 54), and Bethune has responded to that filing (Doc. 55).

**I.   Background**

Sterling brought this action alleging VI Corps had defaulted on a loan/security agreement with De Lage Landen Financial Services ("De Lage"). Under that agreement, De Lage took a security interest in certain equipment VI Corps purchased with the loaned funds. Vicari and Bethune each also allegedly personally guaranteed the loan. De Lage then assigned its rights under the agreement to Sterling. After VI Corps defaulted in February 2019, Sterling filed this lawsuit for breach of contract, replevin, and detinue against VI Corps and breach of guaranty against Vicari and Bethune. Sterling served the defendants, they did not respond, and the Clerk of Court entered their defaults on September 29, 2020 (Doc. 23). A week later the Court entered default judgment against all defendants awarding

Sterling all the relief it had requested (Doc. 26).

Bethune now asks the Court to vacate the entry of default and default judgment against him on the grounds that he was never validly served. Sterling maintains it properly served Bethune on October 16, 2019, by substitute service at his usual place of abode by leaving a copy with Tyler, Bethune's adult son who lived with Bethune, and by mailing a copy to Bethune afterward. Bethune maintains Tyler was never given the process for Bethune and, even if he had been, he did not live at Bethune's residence so he was not capable of receiving substitute service.

## II. Legal Standards

Federal Rule of Civil Procedure 55(c) provides that a court may set aside entry of default for good cause. The Court should do so if the defendant shows (1) good cause for his default; (2) quick action to correct it; and (3) a meritorious defense to the complaint. *Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies, Inc.*, 961 F.3d 942, 949 (7th Cir. 2020); *O'Brien v. R.J. O'Brien & Assocs.*, 998 F.2d 1394, 1401 (7th Cir. 1993). The standard for vacating a default judgment under Federal Rule of Civil Procedure 60(b) is essentially the same as the standard for setting aside an entry of default under Rule 55(c). *Davis v. Hutchins*, 321 F.3d 641, 646 n. 2 (7th Cir. 2003); *Chrysler Credit Corp. v. Macino*, 710 F.2d 363, 367 (7th Cir. 1983). It is, indeed, proper to vacate entry of default and default judgment if the plaintiff has failed to comply with service requirements and the defendant has not waived objection to service. *See Mid-Continent Wood Prod., Inc. v. Harris,* 936 F.2d 297, 301-02 (7th Cir. 1991) (even diligent, substantial compliance with Rule 4 insufficient to assert personal jurisdiction over defendant unless error is purely technical error of form); *Precision Etchings & Findings, Inc. v. LGP Gem, Ltd.*, 953 F.2d 21, 23-24 (1st Cir. 1992) ("A default judgment entered by a court which lacks jurisdiction over the person of the defendant is void . . . and may be set aside *at any time* pursuant to Fed. R. Civ. P. 60(b)(4).").

**III.     Facts**

The evidence presented at the hearing establishes the following facts by a preponderance of the evidence.

Sterling hired Elite Process Serving and Investigations, Inc. to serve process on Bethune. Elite subcontracted the job to SIR Investigations LLC, who gave the assignment to Jack Howser, a trained process server. On the evening of October 16, 2019, Howser went to Bethune's usual place of abode on South Cherry Street in West Frankfort, Illinois, to attempt service. He saw a light on in a large detached garage on Bethune's property, so he walked to the garage and saw a young man. He ascertained that the man was not Bethune but Tyler, who said that he was Bethune's son and that he lived there. Howser asked Tyler if he could leave documents for Bethune with him, and Tyler said he could but that he did not want to sign to indicate he had received the documents. Howser recorded Tyler's appearance as a white male with brown hair, approximately 25 years old, 5 feet 7 inches tall, and weighing 210 pounds. Later, Howser mailed a copy of the process to Bethune at his South Cherry Street residence.

In fact, Tyler did not live at Bethune's house, was in a dispute with Bethune, and was not communicating with him at that time. Instead, Tyler was living with his former step-mother— Bethune's ex-wife—Amanda Thomas on North Benton Road, West Frankfort, Illinois. Thomas had moved out of Bethune's South Cherry Street residence in August 2019. Beginning in September 2019, she allowed Tyler to live in her basement, which was about a mile away from Bethune's house, on the condition that he steer clear of his persistent methamphetamine abuse. He had been homeless before he moved in with Thomas, and when he relapsed in December 2019, he moved out and became homeless again. Even before September 2019, Tyler had not resided with Bethune since 2017, although Bethune and Amanda, while she lived in Bethune's house, had allowed him to spend a few nights there on occasion. Otherwise, he was homeless or in jail. He has always directed his mail to his

grandmother's house at a different address.

There is conflicting testimony about what happened on October 16, 2017, mostly from Tyler and Howser. Of the two, Howser was more credible. The Court draws this conclusion based on Howser's demeanor while testifying, the clarity and reasonableness of his testimony, and the lack of any incentive to fabricate evidence. The Court notes his description of Tyler was slightly shorter and heavier that Tyler actually was at that time, but the Court attributes that to its being an estimate based on a short encounter, and possibly due to Tyler's clothing.

Tyler, on the other hand, did not appear credible. His demeanor while testifying indicated confusion, uncertainty, and a lack of clarity of the type the Court has often observed in young, immature drug abusers. The events occurred while Tyler was battling a long-time addiction to methamphetamine, although he was not using it at that particular moment, which calls into question the reliability of his memory in general. The Court also notes his incentive today to fictionalize the events of October 16, 2019, to avoid what could reasonably have been construed by Bethune as an unlawful entry into his garage and an attempt to unlawfully take a vehicle. Tyler and Bethune have since reconciled their differences, and Tyler would likely not want to reveal facts that could damage this newfound good relationship. The Court further finds that while Tyler was in a dispute with Bethune in October 2019, he would have been unlikely to have passed on the process left by Howser because it would have revealed Tyler's entry into Bethune's garage and because withholding the documents would have been a way for Tyler to further get back at Bethune in their dispute. For these reasons, the Court finds Tyler's testimony as to the events of October 16, 2019, incredible.

Additionally, some evidence suggests that Bethune would have been aware of any attempt to unlawfully enter his garage because of his surveillance system. This does not persuade the Court to disregard Howser's testimony. There are numerous reasons why Bethune, who was out of town on vacation on October 16, 2019, might have unintentionally overlooked an alert on his cell phone or why

he might have disregarded an alert showing criminal activity by his own son.  Additionally, it is possible Tyler could have circumvented Bethune's surveillance measures to avoid detection.  In any case, Howser's testimony remains credible.

Finally, the Court questions Bethune's testimony that he did not receive notice in the mail of the service of process, the request for entry of default, the entry of default, or the motion for default judgment.  This is based on his demeanor while testifying and the incentive he has to testify falsely.  It is true that the United States Postal Service has not been up to snuff for the past several years, but it is unreasonable to believe that it failed on so many occasions related to this litigation.  The Court believes it is more likely that Bethune received at least one of the mailings and discarded it either because he did not want to face the fact that he was a defendant in a lawsuit or because he believed he was not at risk because he had never been served with process.  This case only became a problem for Bethune in December 2020 when he attempted to refinance his house.  In any case, because a follow-up mailing is not required for proper service of process under federal law, this issue is not relevant to the outcome of the proceedings.

Having found these facts, the Court turns to the merits of Bethune's motion.

**IV.     Analysis**

As noted above, in deciding whether to vacate entry of default and default judgment, the Court must decide whether Bethune has shown (1) good cause for his default; (2) quick action to correct it; and (3) a meritorious defense to the complaint.

    **A.     Good Cause**

Bethune has shown good cause for his default; service on him did not comply with service rules.  Federal Rule of Civil Procedure 4(e)(2)(B) permits service on an individual in a federal lawsuit by "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion *who resides there*" (emphasis added).  Unlike substitute service under

Illinois law, Rule 4(e)(2)(B) does not additionally require mailing process to the defendant's residence. *See* 735 ILCS 5/2-203(a)(2). Although mailing a copy of process is advisable, it is not required. Despite Sterling's and Howser's best efforts to serve Bethune by leaving a copy at his home *and* the optional follow-up of service by mail, the summons and complaint were not left with someone who resided at Bethune's home, so it was not effective.

Bethune's failure to respond to the complaint in a timely manner does not appear to be the type of willful refusal to follow Court rules that would justifies refusing to vacate entry of default. *See Davis v. Hutchins*, 321 F.3d 641, 646 (7th Cir. 2003). Instead, it appears Bethune did not know Sterling had attempted what appeared to be good service, so he had good cause for not responding.

Notwithstanding the supplemental authority cited by Sterling, the Court cannot find service was proper. In *Sweeney v. Christner*, No. C13-02817 HRL, 2013 WL 5946504, at *2 (N.D. Cal. Nov. 5, 2013), the court relied on the failure of the defendant to overcome the presumption that he had actually received personal service. And in *Limon-Hernandez v. Lumbreras*, 171 F.R.D. 271 (D. Or. 1997), the question was also whether the defendant himself had been personally served. Any further statements by those courts about substitute service at a defendant's abode are *dicta* and in clear conflict with federal service rules as construed by the Court of Appeals for the Seventh Circuit.

B.   Quick Action

Whether Bethune took quick action to correct the default is a closer question. Whether action qualifies as "quick" turns on the particular situation. *See Jones v. Phipps*, 39 F.3d 158, 165 (7th Cir. 1994). Here, Bethune claims not to have received *any* notice of Sterling's pursuit of default or default judgment, which the Court finds doubtful. Nevertheless, it is possible he saw notice but decided that any judgment would be void because he had not been properly served. Once it became apparent that third parties—specifically, the bank from which he sought to refinance his house around December 2020—was not treating the judgment as void he took action to vacate the default. This is a risky

6

strategy, and the Court does not condone ignoring notices of potential entry of default, but the bottom line remains that Bethune had not been properly served and the Court had no jurisdiction over him to enter default judgment. In these circumstances, the Court accepts Bethune's actions as sufficiently "quick."

### C. Meritorious Defense

Bethune offers the potential defense that his signature on the loan guaranty was forged. A meritorious defense is not necessarily a winning defense, but is instead "one which at least raises a serious question regarding the propriety of a default judgment and which is supported by a developed legal and factual basis." *Jones v. Phipps*, 39 F.3d 158, 165 (7th Cir. 1994). It must be more than a general denial or a bare legal conclusion that a defense exists. *See Pretzel & Stouffer, Chtd. v. Imperial Adjusters, Inc.*, 28 F.3d 42, 46 (7th Cir. 1994). Bethune's defense of forgery satisfies this requirement.

For these reasons, the Court will vacate entry of default against Bethune (Doc. 23) and the default judgment (Doc. 26). The Court will further order all funds collected, if any, to satisfy the judgment against Bethune to be returned and order Sterling to cease collections against Bethune until the case against him is resolved.

### D. Further Proceedings

The Court turns to the claims against the other defendants in this case, which were also resolved by the default judgment. All parties ask the Court to leave that part of the judgment in place, but the Court cannot do that without additional findings pursuant to Federal Rule of Civil Procedure 54(b). Where a judgment resolves fewer than all claims and defendants, the Court must make an express finding "that there is no just reason for delay" for the claims resolved in the judgment and direct that judgment be entered on those claims. Fed. R. Civ. P. 54(b); *Granack v. Continental Cas. Co.*, 977 F.2d 1143, 1144-45 (7th Cir. 1992).

In determining whether to grant judgment under Rule 54(b), the Court must first determine whether the judgment is final in the sense that it is "'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" *Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 7 (1980) (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436 (1956)). Then, the Court must determine whether there is any just reason for delay, taking into account the interests of judicial administration and the equities involved. *Curtiss-Wright*, 446 U.S. at 8; *Schieffelin & Co. v. Valley Liquors, Inc.*, 823 F.2d 1064, 1065-66 (7th Cir. 1987). In attempting to prevent piecemeal litigation, the Court should "consider such factors as whether the claims under review [are] separable from the others remaining to be adjudicated and whether the nature of the claims already determined [is] such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals." *Curtiss-Wright*, 446 U.S. at 8; *see ODC Commc'ns Corp. v. Wenruth Inv.*, 826 F.2d 509, 512 (7th Cir. 1987). The decision to certify a final judgment as to fewer than all claims in a case is left to the sound discretion of the district court. *Curtiss-Wright*, 446 U.S. at 8; *Schieffelin*, 823 F.2d at 1065.

This case presents the rare occasion where a Rule 54(b) judgment is appropriate. The judgment against VI Corps is based on the loan/security agreement and has already been resolved in Sterling's favor. Similarly, the breach of guaranty claim against Vicari has already been resolved in Sterling's favor. Bethune's defense—forgery of his guaranty—has nothing to do with the validity of the original loan/security agreement or Vicari's guaranty and centers on a completely different contractual obligation under *his* guaranty agreement. Liability under the loan/security agreement has been established and is a given, and the time to appeal that decision has long passed. Bethune's guaranty agreement will either be valid because Bethune signed it, or Bethune's signature will be found to be a forgery, and Bethune will not be liable under the guaranty. This is a freestanding issue that will not result in piecemeal litigation or multiple appeals of the same issue, the evils Rule 54(b) was designed

8

to avoid.

Accordingly, the Court will certify that there is no just reason for delay in entry of judgment against VI Corps and Vicari.  The Court will further order the Clerk of Court to vacate the original default judgment (Doc. 26), enter a Rule 54(b) default judgment against VI Corps and Vicari that is identical in form to the original default judgment as to those defendants, and docket it as of the date of the original default judgment, October 6, 2020.  The Court does not intend to order duplicate relief in this second iteration of the judgment against VI Corps and Vicari but simply to preserve the relief already awarded as of the date it was awarded.

As for Bethune, the Court notes that he indicates he would like to proceed to defend this case, and he appeared at the September 21, 2021, hearing without objecting to personal jurisdiction.  The Court finds that he has consented to the jurisdiction of this court and that no further service of process is necessary.

The Court will allow Bethune a reasonable amount of time to respond to Sterling's complaint.  However, that response must be in the form of an answer, not a motion to dismiss.  The defense of forgery is very unlikely to succeed on a motion to dismiss because it will require evidence from those present at the alleged signing of Bethune's guaranty and/or handwriting experts.  Allowing a motion to dismiss for failure to state a claim asserting this defense would be quickly denied, and there is no reason to delay this case further by going through those foreordained steps.

## V. Conclusion

For the foregoing reasons, the Court:

- **GRANTS** Bethune's motion to set aside entry of default and default judgment (Doc. 33);

- **VACATES** the entry of default against Bethune (Doc. 23) and the default judgment (Doc. 26);

- **CERTIFIES** that there is no just reason for delay in entry of judgment against VI Corps and Vicari to await resolution of the claim against Bethune;

- **DIRECTS** the Court to enter a Rule 54(b) judgment against VI Corps and Vicari identical in substance to the original default judgment except for the Rule 54(b) designation and the omission of relief against Bethune. It shall be entered using the filing date of the original default judgment, October 6, 2020;

- **ORDERS** Sterling to return any funds already collected to satisfy the default judgment against Bethune and to cease collections against Bethune until the case against him is resolved;

- **ORDERS** that Bethune shall have 21 days from entry of this order to file an answer to the complaint.

**IT IS SO ORDERED.**
**DATED: September 29, 2021**

                                            s/ J. Phil Gilbert
                                            **J. PHIL GILBERT**
                                            **DISTRICT JUDGE**